Richard A. CLEM, As Administrator of the Estate of Janet L. Portman, Deceased, and Thomas M. Portman, Appellants (Plaintiffs below),

v.

STEVECO, INC., and the Southland Corporation, Appellees (Defendants below).

No. 4–782A192.

Court of Appeals of Indiana, Second District.

June 29, 1983.

Tony H. Abbott, Foley, Cutter & Abbott, Indianapolis, for appellants.

Frank I. Magers, Kightlinger Young Gray & DeTrude, Indianapolis, Samuel A. Fuller, Stewart Irwin Gilliom Fuller & Meyer, Indianapolis, for appellees.

SHIELDS, Judge.

Richard A. Clem (Clem), as Administrator of the Estate of Janet L. Portman (Deceased) and Thomas M. Portman (Portman) (herein after collectively referred to as "Appellants") appeal the trial court's dismissal of their action for wrongful death and loss of consortium against Steveco, Inc. (Steveco) for lack of subject matter jurisdiction and against The Southland Corporation (Southland) for failure to state a claim upon which relief could be granted. Appellants raise the issues:

1) whether the Workmen's Compensation Act (Act) is the exclusive remedy for the injuries suffered by the Deceased, and,

2) whether Southland owed any duty to Deceased.

We affirm in part and reverse in part.

## FACTS

Clem is the administrator of the estate of Janet L. Portman, Deceased. Thomas M. Portman is the husband of the Deceased. Steveco was the employer of the Deceased. Southland is the franchisor of the convenience store in which the Deceased was employed by Steveco.

Steveco employed the Deceased at a Seven-Eleven convenience store located on the east side of Indianapolis on the 11:00 p.m. to 7:00 a.m. shift. On the night of the injury she was working alone. At approximately 3:15 a.m. on March 19, 1980 the Seven-Eleven was robbed, and the Deceased was abducted and murdered. The Deceased was survived only by her husband. Appellants' suit is based on the theory Steveco and Southland "failed in their duty to take reasonable steps to provide Janet L. Portman with a safe place to work, and that said failure was the proximate cause of [her] death on March 19, 1980." Appellants' Brief at 2–3. Specifically Appellants claim:

"The store was not equipped with camera surveillance or monitoring. No security guards were employed by Steveco or Southland to patrol the store premises. The store was not equipped with an alarm system. There were no other ostensible means of security to protect the store premises or the people."

Appellants' Brief at 6.

Her husband, Portman, was unable to show he was Deceased's dependent under

the Act. Though unemployed at the time of Deceased's death, Portman was not physically and financially incapable of supporting himself.[1] Therefore, Workmen's Compensation paid death benefits of One Thousand Five Hundred Dollars; no other benefits were paid.

The trial court dismissed the claim against Steveco under Ind.Rules of Procedure, Trial Rule 12(B)(1) because it found exclusive jurisdiction rested with the Industrial Board of Indiana under the Act. The trial court dismissed the claim against Southland under Ind.Rules of Procedure, Trial Rule 12(B)(6) for failure to state a claim upon which relief could be granted.

## I.

■ I.C. 22–3–2–6 (Burns Code Ed., 1974) states:

"The rights and remedies herein granted to an employee subject to this act . . . on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death."

This provision has been held constitutional. *Seaton v. United States Rubber Co.,* (1945) 223 Ind. 404, 61 N.E.2d 177; *Warren v. Indiana Telephone Co.,* (1940) 217 Ind. 93, 26 N.E.2d 399. *See Northern Indiana Power Co. v. West,* (1941) 218 Ind. 321, 32 N.E.2d 713. The exclusivity provision abrogates all other rights and remedies of an employee against an employer where the injury comes within the Act's coverage. *Ward v. Tillman,* (1979) Ind.App., 179 Ind. App. 626, 386 N.E.2d 1003; *Needham v. Fred's Frozen Foods, Inc.,* (1977) 171 Ind. App. 671, 359 N.E.2d 544.

Appellants make alternative arguments in an attempt to circumvent the exclusivity provision. First, they attack I.C. 22–3–3–19 (Burns Code Ed., Supp.1982), the presumptive dependency provision of the Act, as unconstitutional claiming it impermissibly

discriminates on a gender basis. Second, they argue that although Deceased's injury and death occurred within the course of her employment it did not arise out of her employment. They argue the kidnapping and murder were not the result of her employment, but rather, the result of the "fact that she was alone and vulnerable in the store, and there was no real or immediate danger of the perpetrator being revealed." Appellants' Brief at 23.

## A.

■ Husbands and wives who are conclusively presumed dependent are defined as follows:

"(a) A wife upon a husband with whom she is living at the time of his death, or upon whom the laws of the state impose the obligation of her support at such time. The term "wife" as used in this subsection shall exclude a common-law wife unless such common law relationship was entered into before January 1, 1958, and in addition thereto, shall have existed openly and notoriously for a period of not less than five [5] years immediately preceding the death.

"(b) A husband who is both physically and financially incapable of self-support, upon his wife with whom he is living at the time of her death. The term 'husband' as used in this subsection shall exclude a common-law husband unless such common law relationship was entered into before January 1, 1958, and in addition thereto, shall have existed openly and notoriously for a period of not less than five [5] years immediately preceding the death."

I.C. 22–3–3–19(a), (b) (Burns Code Ed., Supp.1982).

Appellants maintain this provision impermissibly discriminates on a gender basis between similarly situated persons. Therefore, because Appellants are unconstitutionally denied a remedy by the Act they should

---

1. Portman is pursuing his claim for compensation under the Act in another action, following the Act's procedures for appeal and review.

be allowed to proceed without the Act, ignoring the exclusivity provision of the Act. We disagree.

The constitutionality of the presumptive dependency provision is not before us; nor is the resolution of the question necessary to the disposition of this case. *Professional Adjusters, Inc. v. Tandon,* (1982) Ind., 433 N.E.2d 779, 787 (Hunter, J., dissenting).[2] The constitutional question must be raised in Portman's Compensation Act claim because the remedy, assuming the provision is unconstitutional, is to strike the offensive provision and not to declare the entire act unconstitutional. *Indiana Waste Systems, Inc. v. Bd. of Com'rs. of Howard County,* (1979) Ind.App., 389 N.E.2d 52; I.C. 1–1–1–8 (Burns Code Ed., 1982 Repl.). Thus, assuming the provision is unconstitutional, its unconstitutionality does not change the fact Appellants' remedy lies under the Act. A finding of unconstitutionality would alter Portman's burden of proof regarding dependency; it would not alter the fact the Act remains the exclusive remedy.

### B.

■ Appellants also make the argument the Deceased's death did not arise out of her employment although they admit it occurred in the course of her employment. Were that the case the Act would not apply and the trial court would have erred in dismissing this action against Steveco for lack of subject matter jurisdiction. The trial court in its entry of dismissal found that the death of Deceased arose out of her employment.

The record reveals the facts are undisputed and lead to but one conclusion. When the facts lead to one inference, the issue is one of law for the court to decide. *Ward,* 386 N.E.2d at 1005. The only reasonable inference from the undisputed facts is the abduction and murder arose · out of Deceased's employment as a cashier perform-

ing her duties. This court's treatment of a similar argument in *Wayne Adams Buick, Inc. v. Ference,* (1981) Ind.App., 421 N.E.2d 733, is informative.

In *Ference* this court held an attack by muggers upon an employee depositing company mail in a street mailbox on her way home arose out of her employment. In so doing, we said, 421 N.E.2d at 736 (citations omitted):

"Employer is correct in its assertion that ordinarily an assault by a third person not connected to the employment cannot be considered incidental to the employment. A personal squabble with a third person culminating in an assault is not compensable. However, where the assault is one which might be reasonably anticipated because of the general character of the work, or the particular duties imposed upon the workman, such as a baking route salesman who carried money and was shot and robbed, or a night watchman killed by intruders, such injuries and death may be found to arise out of the employment. Under this doctrine it can be logically asserted that a bookkeeper on the street with company mail could be a target for hoodlums who may believe the mail might contain valuables."

The attack in this case, which commenced on the premises, is at least as anticipatable as the *Ference* off premises attack. Therefore, we adopt and follow the *Ference* analysis.

The trial court did not err in dismissing Appellants' complaint against Steveco for lack of subject matter jurisdiction. The Act is the Appellants' exclusive remedy for recovery against Steveco for Deceased's injuries.

### II.

Appellants second issue is whether the trial court properly dismissed Appellants'

2. We are aware the United States Supreme Court has declared an extremely similar Missouri provision unconstitutional as improper gender-based discrimination. *Wengler v. Druggists Mutual Insurance Co.,* (1980) 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107. Similarly circumstanced people must be treated alike. *See Cunningham v. Aluminum Company of America,* (1981) Ind.App., 417 N.E.2d 1186, 1192. *Cf. Stoner v. Howard Sober, Inc.,* (1958) 128 Ind.App. 371, 149 N.E.2d 121.

claim against Southland because Appellants failed to state a claim.

Appellants, to avoid dismissal under T.R. 12(B)(6), need only plead the operative facts involved in the litigation; they need not state their legal theory nor plead all the elements of a cause of action. *F.W. Means & Co. v. Carstens,* (1982) Ind.App., 428 N.E.2d 251, 262. We view the complaint in a light favorable to Appellants and draw every inference in their favor. *Iglesias v. Wells,* (1982) Ind.App., 441 N.E.2d 1017.

Applying the stated standard of review, the trial court erred in granting Southland's motion to dismiss for failure to state a claim. Appellants argue the amended complaint asserts two separate theories of liability on Southland's part:

1) the existence of an agency relationship by virtue of which Southland may be held vicariously liable for Steveco's alleged omission in providing. Deceased with a safe place to work, and

2) Southland retained sufficient control over Steveco's store such that it independently owed Deceased a duty to require Steveco to maintain a safe place of employment, the alleged breach of which gives rise to direct liability on Southland's part.

### A.

Assuming, *arguendo,* an agency relationship exists between Steveco and Southland, Southland's liability is predicated upon the liability of its agent, Steveco. *See Biel, Inc. v. Kirsch,* (1958) 130 Ind.App. 46, 153 N.E.2d 140, *reversed on other grounds.* We resolved in Steveco's favor the issue of whether Steveco is protected by the Act. Logically, if a claim for injuries by the employer is satisfied through the Act, that satisfaction also satisfies the liability of all parties whose liability is predicated solely upon their relationship to the immediate employer.

Southland cannot be held responsible outside of the Act for any vicarious liability. It would be an anomalous result to deny the protection of the Act to an employer's franchisor, whose liability is only derivative, when protection is given to an employer who has a dual capacity as employer and as manufacturer or property owner. *See Kottis v. United States Steel Corp.,* (7th Cir. 1976) 543 F.2d 22;[3] *Needham,* 359 N.E.2d 544.[4] *See also Jackson v. Gibson,* (1980) Ind.App., 409 N.E.2d 1236.[5]

The result would be particularly anomalous because equity and public policy would seem to weigh more heavily in favor of allowing recovery outside the Act by an employee against his employer as manufacturer or property owner than in favor of allowing recovery outside the Act by an employee against his employer's franchisor. Nevertheless, the employer as manufacturer or property owner is protected by the Act's exclusivity provision and therefore,

---

3. In *Kottis* the administratrix of the estate of Kottis brought a civil action against the deceased's employer alleging the employer occupied two other capacities, owner of the land and manufacturer of the crane on which Kottis' fatal accident occurred. The trial court granted the employer's motion for summary judgment. The Court of Appeals affirmed on the basis of the exclusiveness of the remedy provided by the Act.

4. *Needham* concerned an employer of Frozen Foods who attempted to sue Frozen Foods in its capacity as the manufacturer of a pressure cooker unit which exploded burning the employer. Judge Sullivan, speaking for the court, adopted *Kottis* and its analysis *in toto.*

5. *Jackson* involved a corporation which had one shareholder who also served as president and manager of the corporation. This shareholder also owned the building in which an employee of the corporation was injured while performing his duties for the corporation. The employee sued the individual shareholder for negligence. This court held the exclusivity provision of the Act controlled to protect the shareholder even though the case was not a pure dual capacity situation but, in fact, involved two different entities, *i.e.,* the corporation and the individual. This court said the Act's protection and policies apply to that "group of persons conducting the business of the employer.... Giving the statutory language its plain ordinary meaning [the exclusivity provision], persons conducting the business of the employer are liable only as set out in the Act." *Jackson,* 409 N.E.2d at 1238.

we hold the employer's franchisor is similarly protected.

### B.

■ Appellants' second theory involves the allegation of a direct duty and a consequent liability on the part of Southland to provide Deceased with a safe place to work. The liability of a franchisor for injuries suffered by employees of its franchisee is a developing area of law. Courts attempt to analogize the franchisor-franchisee employee relationship to areas of law such as landlord-tenant, parent-subsidiary, employer-independent contractor, lessor-lessee, principal-agent and employers acting in dual capacities. None of these analogies are on point because, with the exception of the employer-independent contractor relationship, all of the relationships are based, to an extent, on agency principles. Only the employer-independent contractor area carries some sort of direct connection which could be analogized to the franchisor-injured franchisee employee relationship. As could be expected, the results of the cases are divergent even where the courts were confronted with identical franchise agreements. *E.g., compare Wood v. Holiday Inns, Inc.,* (5th Cir.1975) 508 F.2d 167 (used principal-agent analysis, found question of material fact on theory of apparent authority, remanded for new trial) *with Murphy v. Holiday Inns, Inc.,* (1975) 216 Va. 490, 219 S.E.2d 874 (used principal-agent analysis, found no issue of material fact on theory of ostensible authority, affirmed summary judgment).

An Illinois case and a recent decision of the United States District Court for the district of New Hampshire supply the most manageable test for determining direct liability of a franchisor in a situation involving the franchisor and an injured franchisee employee. In *Coty v. U.S. Slicing Machine Company,* (1978) 58 Ill.App.3d 237, 15 Ill. Dec. 687, 373 N.E.2d 1371, a fifteen year old girl, injured while operating a machine in a franchised fast food restaurant, sued the franchisor for negligence and willful and wanton misconduct. The trial court direct-ed a verdict for the franchisor at the close of the plaintiff's evidence. The appellate court discussed the franchisor-injured franchisee employee problem and concluded the rationale behind the employer-independent contractor cases was the most appropriate because the liability of the employer to his independent contractor, like the direct liability of the franchisor to his franchisee's employee, must be based on principles other than agency.

The *Coty* court held:

"The employer-independent contractor cases, . . . are somewhat inapposite. The franchisee is not in any usual sense an independent contractor of an 'employer.' However, the general rationale of the cases, that a person who possesses a right to supervise the internal operations of another's enterprise, which includes a right to veto an unsafe procedure, may be liable for the negligent failure to do so, can be applied to the franchise cases. However, this right to interdict unsafe practices must consist of something more than a general right to make suggestions or recommendations or to order the work stopped or resumed."

*Id.* 15 Ill.Dec. at 691, 373 N.E.2d at 1375. Based on the facts presented at trial, the Illinois court affirmed the trial court, holding the franchisor did not possess sufficient right to supervise and therefore, did not have an independent duty to the employee.

In *Wise v. Kentucky Fried Chicken Corp.,* (D.N.H., 1983) 555 F.Supp. 991, the district court cited *Coty* with approval while refusing to grant summary judgment to the franchisor. The *Wise* court found summary judgment inappropriate because the agreement in issue raised questions of material fact as to the degree of control or direction the franchisor retained. *Wise, Id.* at 995. We agree with the *Wise* court's underlying analysis that franchise agreements commonly involve questions of material fact which cannot be disposed of by summary judgment. Therefore, preliminary disposition of the question of the amount of control a franchisor retains is generally inappropriate on a motion to dismiss for failure

to state a claim upon which relief could be granted because the question commonly presents a question which is not addressable by a T.R. 12(B)(6) motion. That is the situation in the instant case, considering the broad allegations in the complaint and the trial court's inability to look beyond the complaint in ruling upon a T.R. 12(B)(6) motion. The trial court erred in granting Southland's motion to dismiss under Trial Rule 12(B)(6).[6]

Judgment affirmed in part and reversed and remanded in part.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

**6.** Appellants also raise the argument Southland's direct liability stems from I.C. 22–1–1–10 (Burns Code Ed., 1974) which calls for "Every employer and place of employment," to furnish employees with a safe place to work.